## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

ADAM POTASH and
CINDY POTASH f/k/a
Cindy Leon,

      Plaintiffs,

-vs-

HOME POINT FINANCIAL
CORPORATION and TRANS
UNION, LLC,

      Defendants.

_____/

## COMPLAINT
## JURY DEMAND

Plaintiffs, Adam Potash (hereinafter "Mr. Potash") and Cindy Potash f/k/a Cindy Leon (hereinafter "Mrs. Potash") (collectively "Plaintiffs"), allege violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. (hereinafter "FCRA"), against Home Point Financial Corporation (hereinafter "Home Point") and Trans Union, LLC (hereinafter "Trans Union"), for illegal credit reporting activities and state the following in support thereof:

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction under 15 U.S.C. § 1692k and 28 U.S.C. § 1331 because this action arises out of a federal statute.

2.     This Court has personal jurisdiction because Defendants' conduct business throughout the United States, including the State of Florida.

3.      Defendants' voluntary contact with Plaintiffs regarding their credit reporting activities made it foreseeable that they would be haled into a Florida court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

4.      Venue is proper because the alleged acts and transactions complained of occurred here, Plaintiffs live here, and the Defendants transact and/or conduct business here.

## PARTIES

5.      Plaintiffs are natural persons and, at all times relevant to this action, where residents of Palm Beach County, Florida.

6.      Home Point is a foreign for-profit corporation with its principle place of business located at 2211 Old Earhart Road, Suite 250, Ann Arbor, MI 48105.

7.      Trans Union is a foreign limited liability company with its principal place of business located at 555 West Adams Street, Chicago, IL 60661.

## LEGAL BACKGROUND

### I.  FAIR CREDIT REPORTING ACT

8.      "Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52, 127 S. Ct. 2201, 2205 (2007) (citations omitted).

9.      Congress found that "inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system."

15 U.S.C. § 1681(a)(1).

10.     Congress also found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. §§ 1681(a)(3), (4).

11.     To further the FCRA's purpose, Congress requires "consumer reporting agencies [to] adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b).

12.     "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy. The Fair Credit Reporting Act seeks to secure these rights." *Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency*, 91st Cong. 2 (1969).

13.     The FCRA requires credit-reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of consumer reports." 15 U.S.C. §

1681e(b).

14.     If a consumer disputes information contained in his or her credit report, the FCRA requires a credit reporting agency to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller." 15 U.S.C. § 1681i(a)(1)(A).

15.     In performing the reinvestigation, the FCRA requires a credit-reporting agency to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." 15 U.S.C. § 1681i(a)(4).

16.     Under the FCRA, entities that furnish information (hereinafter "Furnishers") to credit-reporting agencies are also required to investigate information that is disputed by consumers. *See Hinkle v. Midland Credit Mgmt., Inc., et al.*, 827 F.3d 1295, 1297 (11th Cir. 2016).

17.     The investigation done by Furnishers must be conducted in a reasonable manner in order to determine if the credit information is inaccurate. 15 U.S.C. § 1681i(a)(1)(A).

18.     If the disputed information is inaccurate or incomplete or cannot be verified, the credit-reporting agency "shall (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based

on the results of the reinvestigation; and (ii) promptly notify the furnisher of that

information that the information has been modified or deleted from the file of the

consumer." 15 U.S.C. §§ 1681(a)(5)(A)(i), (ii).

19.    The FCRA provides a private right of action against any person that

violates its provisions. 15 U.S.C. §§ 1681o, 1691n.

### FACTUAL BACKGROUND

20.    In March of 2018, Plaintiffs listed their home for sale and began

searching for a new home to purchase, in order to be closer to their children's schools.

21.    On June 1, 2018, Plaintiffs where alerted by a credit monitoring system

that their Home Point mortgage account was being reported as delinquent.

22.    Plaintiffs have never been late making a mortgage payment to Home

Point and have maintained good credit for several years.

23.    After receiving the alert, Plaintiffs immediately called Home Point in

order to find out why their mortgage account was being reported as delinquent.

24.    Upon calling Home Point, Plaintiffs received a pre-recorded message

stating that Home Point inaccurately reported information to a credit bureau and were

working to rectify the issue.

25.    On June 7, 2018, Plaintiffs received a letter (hereinafter the "June Letter")

from Home Point stating in pertinent part:

"On May 31st, 2018, Home Point Financial experienced a technical issue that
affected the accuracy of information reported to one of the credit bureaus. As a
result, the status of your account was reported inaccurately for a brief period of
time. Home Point worked immediately with the credit agency to correct the issue.
Your loan status has since been corrected with the credit bureau. We sincerely

apologize for this error and have taken steps to ensure that it will not happen again."

26.     Soon after receiving the June Letter, Plaintiffs began communicating with Home Point in attempts to have the inaccurate information on their credit reports corrected.

27.     Plaintiffs also sent formal disputes and supporting documentation to Home Point and the three major credit-reporting agencies, Equifax, Experian, and Trans Union, in attempts to have the inaccurate information corrected.

28.     All three major credit-reporting agencies received Plaintiffs' disputes because they responded to them in writing.

29.     Home Point also received Plaintiffs' disputes because it responded to the three major credit-reporting agencies.

30.     Equifax and Experian responded to Plaintiffs' disputes, advising that the inaccurate Home Point account would be corrected.

31.     Trans Union responded to Plaintiffs' disputes, advising that Home Point had verified the subject account as accurate.

32.     Trans Union continues to report the negative Home Point account, despite having knowledge that Plaintiffs are not late on their mortgage.

33.     After receiving the response from Trans Union indicating that it would not delete the inaccurate Home Point account, Plaintiffs felt frustrated and powerless.

34.     Home Point and Trans Union have willfully ignored all of this information and continued to report inaccurate credit information concerning Plaintiffs.

35.     Home Point reported this erroneous information to the credit reporting agencies willfully or with reckless disregard of the truth.

36.     Home Point's negative credit reporting had a negative impact on Plaintiffs' credit score.

37.     Because of the inaccurate reporting of their Home Point mortgage account, Plaintiffs' were forced to take their home off the market.

38.     Because of the inaccurate reporting of their Home Point mortgage account, Plaintiffs' began to have marital issues.

39.     In September of 2018, Mrs. Potash applied for a credit line increase with her existing credit card company, Discover.

40.     Trans Union prepared Plaintiff's consumer report, which included the inaccurate Home Point account, and provided it to Discover.

41.     Mrs. Potash was subsequently denied Plaintiffs' application for a credit line increase by Discover because of the inaccurate Home Point account.

42.     After receiving the denial of a credit line increase from Discover, Plaintiffs felt devastated, humiliated, frustrated and powerless.

43.     Plaintiffs are now "locked out" of the credit market because of the erroneous information and cannot obtain credit on the most favorable terms as a result thereof.

44.     Plaintiffs requested verification and deletion of the negative account; however, Home Point and Trans Union never properly evaluated or considered the Plaintiff's information, claims or evidence, and did not make proper attempts to

substantiate or verify the accuracy of the inaccurate trade-line.

## COUNT I
### Violation of 15 U.S.C. § 1681e(b) by Trans Union

45.     At all times relevant, Plaintiffs where "consumers" as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681a(c).

46.     At all times relevant, Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f) because it is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties and disburses consumer reports under contract for monetary compensation.

47.     Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning Plaintiffs.

48.     Because of Trans Union's violations, Plaintiffs suffered damage, including but not limited to, loss of credit, loss of the ability to purchase and benefit from credit, the statutory right to accurate credit information, emotional distress, and the embarrassment of credit denials.

49.     Trans Union's conduct was willful, rendering it liable for damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

50.     In the alternative, Trans Union's conduct was negligent; entitling Plaintiff to recover damages under 15 U.S.C. § 1681o.

51.     Plaintiffs are entitled to recover costs and attorney's fees from Trans

Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and against Trans Union for actual damages, statutory damages, attorney's fees, litigation expenses and costs of suit, and such further relief as the Court deems proper.

## COUNT II
### Violation of 15 U.S.C. § 1681i by Trans Union

52.    At all times relevant, Plaintiffs where "consumers" as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681a(c).

53.    Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f) because it is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties and disburses consumer reports under contract for monetary compensation.

54.    Plaintiffs sent, and Trans Union received, written disputes of the negative Home Point credit entry on Plaintiffs' credit reports.

55.    After receiving the dispute, Trans Union violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiffs' credit files; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to furnishers; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiffs' credit files; and by relying upon verification from a source it has reason to know is unreliable.

56.    Because of Trans Union's violations, Plaintiffs suffered damage,

including but not limited to, loss of credit, loss of the ability to purchase and benefit from credit, the statutory right to accurate credit information, emotional distress, and the embarrassment of credit denials.

57.     Trans Union's conduct was willful, rendering it liable for damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

58.     In the alternative, Trans Union's conduct was negligent; entitling Plaintiff to recover damages under 15 U.S.C. § 1681o.

59.     Plaintiffs are entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and against Trans Union for actual damages, statutory damages, attorney's fees, litigation expenses and costs of suit, and such further relief as the Court deems proper.

## COUNT III
### Violation of 15 U.S.C. § 1681s-2(b) by Home Point

60.     At all times relevant to this action, Plaintiffs where "consumers" as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681a(c).

61.     At all times relevant to this action, Home Point was a "furnisher" under the FCRA because it provides information concerning consumers to credit reporting agencies.

62.     Home Point violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate the Plaintiffs' disputes of the negative account; by failing to review

all relevant information regarding the negative account and by failing to accurately respond to the disputes concerning the negative account.

63.    Home Point's conduct was willful, rendering it liable for damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

64.    In the alternative, Home Point's conduct was negligent; entitling Plaintiffs to recover damages under 15 U.S.C. § 1681o.

65.    Because of Home Point's violations, Plaintiffs suffered damage, including but not limited to, loss of credit; loss of the ability to purchase and benefit from credit; the statutory right to accurate credit information, emotional distress, and the embarrassment of credit denials.

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and against Home Point for actual damages, statutory damages, attorney's fees, litigation expenses and costs of suit, and such further relief as the Court deems proper.

## JURY TRIAL DEMAND AND
## RESERVATION OF PUNITIVE DAMAGES

Plaintiffs respectfully request trial by jury. Plaintiffs reserve the right to amend the Complaint to add a claim for punitive damages.

Respectfully Submitted,

/s/ *Christopher W. Legg*
Christopher W. Legg, Esq.
Fla. Bar No.: 44460

CHRISTOPHER W. LEGG, P.A.
499 E. Palmetto Park Rd., Ste. 228
Boca Raton, FL 33432

Office: 954-962-2333
Chris@theconsumerlawyers.com


/s/ *Jibrael Hindi*
Jibrael S. Hindi, Esq.
Fla. Bar No.: 118259
110 S.E. 6th Street, Ste. 1744
Ft. Lauderdale, FL 33301
Office: 954-628-5793
Jibrael@jibraellaw.com